# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL COULBORN HOLLORAN, *et al.*, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-01050 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |


| | | |
|---|---|---|
| EVAN BROWN, *et al.*, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-1080-JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Requested |
|     *Defendants*. | ) | |


| | | |
|---|---|---|
| DANIEL FISK, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01194 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |


| | | |
|---|---|---|
| AMANDA HALLMAN, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01165 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Requested |
|     *Defendants*. | ) | |


| | | |
|---|---|---|
| DALTON HARRIS, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01192 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| JAMES C. HOLLORAN, | ) | |
| --- | --- | --- |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-1187 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| ALEXIS PINNELL, | ) | |
| --- | --- | --- |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-1193-JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| JOHN RAINEY, | ) | |
| --- | --- | --- |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01167 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| AARON RODEN, | ) | |
| --- | --- | --- |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01195 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| CODY SCOTT, | ) | |
| --- | --- | --- |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01166 JDB-egb |
| | ) | |
| DEPUTY JOE DUNCAN, *et al.*, | ) | Jury Demanded |
|     *Defendants*. | ) | |

| BLAKE WILLIAMS, | ) | |
| --- | --- | --- |
|     *Plaintiff*, | ) | |

|                                      | )  |                              |
|                                      | )  |                              |
| v.                                   | )  | Case No. 1:13-cv-01168 JDB-egb |
|                                      | )  |                              |
| DEPUTY JOE DUNCAN, *et al.*,         | )  | Jury Requested               |
|     *Defendants*. | ) |                              |

## REPORT AND RECOMMENDATION

On referral for determination and/or report and recommendation is Plaintiffs' Motion seeking sanctions against Defendants for spoliation of evidence [D.E. 97 (Case No. 13-1050[1])]. A hearing on this Motion was held on September 9, 2014.

### Relevant Background

This matter arises from an outdoor party, involving alcohol, on the rural property of the Plaintiff Halloran, and the arrest and temporary confinement by the Sheriff of Benton County and his deputies of a crowd of attendees. Holloran's son, Holloran II, also was arrested and is a Plaintiff, along with other attendees of the party.

The Amended Complaint [D.E. 40] names Benton County, its former Sheriff Tony King[2], some seventeen deputies, and twenty John Does as Defendants. Plaintiff Holloran claims injuries from his arrest at his farm. Further, following his arrival at the Benton County Jail around 4:00 a.m. on June 24, 2012, he claims that he was held in a 5' x5' holding cell for approximately fifteen hours without legal cause and without receiving medical care for injuries from his assault by the Sheriff during the earlier proceedings at his farm. Holloran notes the charges against him were subsequently dropped.

Holloran II claims that at the farm, he was thrown down to the ground by the Sheriff and hand-cuffed, then struck in the head with a flashlight. Following his arrival at the jail, he was placed

---

[1] In order to minimize confusion, all Docket Entry references will be to 13-1050.
[2] Sheriff King subsequently was not re-elected, but will be referred to here as Sheriff King.

in a holding cell and then moved to the "drunk tank." While there, Holloran II and others were threatened that they would be pepper-sprayed by deputies, and the Sheriff threatened to throw a smoke bomb in the cell.

During the hearing, it was agreed that one or more of the male detainees urinated on the floor in the larger room where the men were detained, and that an officer "finally shoved them a mop and bucket of water to clean" the area. In total, some 50-60 people, according to the Sheriff's testimony, were arrested and held over at the jail facility. During their stay, they were segregated in three groups – minors, women, and men.

The parties agree and the record is clear that counsel for Plaintiffs had timely notified both Defendant Sheriff King and the Benton County Attorney to preserve, among other things, the footage of the jail video recordings – available from some fifty cameras inside and outside the facility – in reference to this lawsuit. And it is undisputed that this preservation was not done by the Sheriff. The testimony presented through Sheriff King and his Assistant Jail Administrator Lieutenant Debbie Baird (in earlier depositions and in the hearing before this Magistrate Judge), reveals that both agreed the Sheriff had tasked her to download the video. However, Baird does not recall the specific day, but whichever day that it might have been, the video equipment had already timed out on its 30 day-roll-over and the subject video footage was no longer available. She was confident the instruction of the Sheriff had come too late. The Sheriff disagrees and says his conversation with her occurred before the day that the video would have been erased. Finally, Counsel for the Benton County Deputy Defendants argued at this hearing that his clients had no role in this spoliation matter, they that should be excluded from any possible sanctions and that the Court should carefully fashion sanctions, if any, against the Sheriff alone, so as not to prejudice his clients.

## Analysis

There is no issue that Counsel for Plaintiffs timely and clearly alerted the Benton County Attorney and Defendant Sheriff of the need to preserve the evidence of the jail video footage. This is a significant point conceded by the all. Notwithstanding, the video tapes either were permitted to cycle out after 30 days or the footage could have been erased on purpose.

After considering the testimony and arguments, both written and oral, the Magistrate Judge accepts Lt. Baird's testimony as credible that by the time Defendant Sherriff instructed her to secure the video it was too late to save it. As noted, Sheriff King's version of his effort to preserve the footage was to tell her to do so. While the Sheriff testified that Lt. Baird had sufficient time, Lt. Baird's testimony was to the contrary and appeared more credible and certain that she acted the very same day the Sheriff instructed her. The Magistrate Judge finds Lt. Baird's recollection of this event to be persuasive on this important point.

Otherwise, for the Court to accept the Sheriff's explanation of his handling of this preservation request, the Magistrate Judge would have to ignore the Sherriff's many years' experience in office, no doubt with similar requests to preserve evidence. Here, the Sherriff was on clear notice, and yet did not honor his obligation and as a result, potentially significant evidence was destroyed. As a veteran law officer, Sheriff King no doubt was well aware of the evidentiary value of video footage. It is somewhat surprising to the Court that Sheriff King would treat this preservation matter so casually and permit evidence –possibly favorable to him – simply to vanish. As a result of his conduct, at best, was grossly negligent, and at worst, intentional, the Sheriff and Benton County should be strongly sanctioned.

A potential sanction should correspond to the party's fault in destroying the evidence. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F. 3d. 99 (2nd Cir. 2002). The Magistrate

Judge recommends a finding that sanctions are appropriate only as to Sheriff King and Benton County and concerning only the time period Plaintiffs were entering and inside the jail property (the time period within the video surveillance area). The sanctions should not apply to the Defendant Deputies, who insofar as this Court can establish, had no role in the preservation or destruction of the video footage.

As sanctions, the Magistrate Judge recommends that the District Court instruct Sherriff King and Benton County to pay the attorney fees and costs associated with the preparation and filing of this Motion, and give the following adverse inference instruction to the jury at trial: *"Defendant Sheriff Tony King has destroyed or permitted the destruction of video evidence from the jail in this case. Because of his actions, there is a presumption against the Sheriff and Benton County that the video evidence would have been adverse to the Defendant Sheriff and Benton County insofar as his conduct in the jail and jail parking lot. This presumption does not apply to the earlier events at the farm of Plaintiff Holloran or during the transportation of the Plaintiffs to jail, except as to the parking lots which would have been under the scrutiny of the cameras. Ladies and Gentlemen of the jury, this inference is against Sheriff King and Benton County only and you are instructed not to consider this inference against any of the Defendant Deputies, at any time or place."*

Respectfully submitted this 6th day of October, 2014.

                                          **s/Edward G. Bryant**
                                          UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**