IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DANIEL COULBORN HOLLORAN, *et al.,*

    Plaintiffs,

v.  No. 13-1050

DEPUTY JOE DUNCAN, *et al.*,

    Defendants

---

EVAN BROWN, *et al.,*

    Plaintiffs,

v.  No. 13-1080

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

DANIEL FISK,

    Plaintiff,

v.  No. 13-1194

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

AMANDA HALLMAN,

    Plaintiff,

v.     No. 13-1165

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

DALTON HARRIS,

    Plaintiff,

v.     No. 13-1192

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

JAMES C. HOLLORAN,

    Plaintiff,

v.     No. 13-1187

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

ALEXIS PINNELL,

    Plaintiff,

v.     No. 13-1193

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

JOHN RAINEY,

    Plaintiff,

v.                                                                                               No. 13-1167

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

AARON RODEN,

    Plaintiff,

v.                                                                                               No. 13-1195

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

CODY SCOTT,

    Plaintiff,

v.                                                                                               No. 13-1166

DEPUTY JOE DUNCAN, *et al.,*

    Defendants

---

BLAKE WILLIAMS,

    Plaintiff,

v.                                                                                               No. 13-1168

DEPUTY JOE DUNCAN, *et al.,*

    Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED,
GRANTING MOTION FOR SANCTIONS AND
DIRECTING PLAINTIFFS' COUNSEL TO SUBMIT AFFIDAVIT
OF FEES AND COSTS TO THE MAGISTRATE JUDGE

Before the Court is the August 1, 2014 motion of the Plaintiffs for sanctions against the Defendants for spoliation of evidence. (D.E. 97.[1]) The motion was referred to the United States magistrate judge for determination and/or report and recommendation. (D.E. 101.) On October 6, 2014, Magistrate Judge Edward G. Bryant entered a report and recommendation in which he recommended that certain sanctions be imposed. (D.E. 110.) Separate timely objections have been filed on behalf of Defendants Benton County, Tennessee (the "County") and Benton County Sheriff Tony King (D.E. 118) and Defendants Joe Duncan, Jason Lowery, Lee Hatley, Josh Hedge, Alan Bolan, Mike Lockart, Debbie Baird, Brandon Smith, Matthew Fry, Bryant Allen, Andrew Clem, John Clem, Ricky Mallard, Ricky Pafford, Chris Rogers and Bert Wells (collectively, the "Individual Defendants")[2] (D.E. 111), to which the Plaintiffs have responded (D.E. 119).

When objections are made to a magistrate judge's report and recommendation, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "[T]he filing of an objection does not oblige the district court to ignore the report

---

[1] Docket entry numbers identified in this order refer to the lead case -- 13-1050.

[2] Subsequent to the filing of the objections, Plaintiffs' claims against Individual Defendants Hatley, Fry and John Clem were dismissed with prejudice. (D.E. 124.)

4

and recommendation; it requires the court to give fresh consideration to the finding objected to insofar as the objection impugns the integrity of the finding." *Fharmacy Records v. Nassar*, 465 F. App'x 448, 456 (6th Cir.), *cert. denied*, 133 S. Ct. 545 (2012).

The Plaintiffs in these cases allege that, in the early evening of June 23, 2012, the Benton County Sheriff's Office received a report of underage drinking on private property owned by Plaintiff Daniel Coulborn Holloran and located off Thompson School Road in Benton County. King and several sheriff's deputies arrived at the property and a number of persons were arrested, including the property owner. It is averred that the Plaintiffs were transported to the County jail and detained for several hours. During the arrests and detentions, Plaintiffs claim their constitutional rights were violated. Among other things, they allege that they were placed in holding cells without receiving medical care for injuries sustained during the arrests and were threatened with pepper spray and a smoke bomb.[3]

In the instant motion for sanctions, counsel for Plaintiffs contends that on July 12, 2012 a letter was sent to King and Benton County Attorney Phillip Hollis stating as follows:

> Please be advised that my firm has been retained by Evan Brown and Travis Ricki to investigate any and all potential causes which my clients may have stemming from the arrest, detainment, transportation, booking, charging and/or releasing of my clients and others on June 23, 2012 and June 24, 2012 at Benton County Sheriff's Department. Please address all future contact and correspondence concerning this incident to my attention and refrain from contacting my client's [sic] without my express permission.
>
> This letter also serves to put you on notice to maintain the integrity of ALL EVIDENCE pertaining to the arrest, detainment, transportation, booking, charging, releasing of my clients and others on June 23, 2012 and June 24, 2012 in Camden,

---

[3]At the hearing before the magistrate judge, there was also testimony that one or more of the detainees urinated on the floor of the room where some of the males were held and that an officer "shoved them a mop and bucket of water to clean" the mess. (D.E. 110 at 4.)

5

> Tennessee, specifically the Benton County Sheriff's Department and not to dispose, alter, modify, destroy or perform destructive testing on any evidence, documents, reports, records, etc. pertaining to this incident prior to providing my office an opportunity to inspect this evidence. This request covers anything which in any way pertains to this incident and includes, but is not limited to, all law enforcement records, jail records, transportation records, memoranda, notes, lists, incident reports, supplemental incident reports, warrants, witness statements, videotapes from any source, audiotapes from any source, photographs, booking reports and photographs, intake sheets, jail logs, cellular telephone records, witness statements, diagrams, fingerprint cards, dispatcher tapes and logs, videos from patrol cars, officer schedules, photographs of the scene and the victims, field notes, daily activity logs, daily rosters, daily work schedules, policies, procedures, ambulance records or reports, towing records, correspondence, personal belongings of my clients/other citizens, alleged drugs and/or drug paraphernalia, test results or any other evidence, records, documents or things pertaining to this the arrest or detainment of my clients and other citizens on June 23, 2012 and June 24, 2012 in Camden, Tennessee, specifically the Benton County Sheriff's Department.

(D.E. 98-1 at 1, 98-2 at 1.) Despite the presence of some fifty cameras at various places in the jail facility, no footage of jail video recordings was preserved or provided to counsel.

Upon review of the parties' submissions and the testimony and argument adduced at a hearing on the instant motion held September 9, 2014, the magistrate judge found credible the testimony of Lt. Debbie Baird that, although King instructed her to secure the relevant video footage, it was too late to salvage it by the time he made the request because the jail's tapes are permitted to cycle out after thirty days and that time period had elapsed. Judge Bryant disbelieved King's assertion that he gave the instruction to Baird in sufficient time for the footage to be obtained, concluding that

> for the Court to accept the Sheriff's explanation of his handling of this preservation request, the Magistrate Judge would have to ignore the Sherriff's [sic] many years' experience in office, no doubt with similar requests to preserve evidence. Here, the Sherriff [sic] was on clear notice, and yet did not honor his obligation and as a result, potentially significant evidence was destroyed. As a veteran law officer, Sheriff King no doubt was well aware of the evidentiary value of video footage. It is somewhat surprising to the Court that Sheriff King would treat this preservation matter so casually and permit evidence -- possibly favorable to him -- simply to

6

> vanish. As a result of his conduct, [which] at best, was grossly negligent, and at worst, intentional, the Sheriff and Benton County should be strongly sanctioned.

(D.E. 110 at 5.) The magistrate judge further determined that the recommended sanctions should not apply to the deputies named as defendants in these cases, as there was no evidence they had any role in the preservation or destruction of the video. As sanctions for the spoliation of evidence, Judge Bryant recommended an award of attorneys' fees and costs associated with the filing of the instant motion along with the following adverse inference instruction to be given at trial:

> Defendant Sheriff Tony King has destroyed or permitted the destruction of video evidence from the jail in this case. Because of his actions, there is a presumption against the Sheriff and Benton County that the video evidence would have been adverse to the Defendant Sheriff and Benton County insofar as his conduct in the jail and jail parking lot. This presumption does not apply to the earlier events at the farm of Plaintiff Holloran or during the transportation of the Plaintiffs to jail, except as to the parking lots which have been under the scrutiny of the cameras. Ladies and Gentlemen of the jury, this inference is against Sheriff King and Benton County only and you are instructed not to consider this inference against any of the Defendant Deputies, at any time or place.

(*Id.* at 6.)

Both objections filed by the Defendants submit that the crafting of a jury instruction at this point in the litigation is at best premature. The County and King argue that most if not all of the images that may have been on the lost footage are not in dispute, including the identities of those brought to the jail and the times at which each came into and left from the facility. These Defendants also point out that the footage would have contained no audio and, thus, could not have offered any probative evidence as to anything King or others may have said.[4] It is the position of the County and King that, for these reasons, the Court should reserve judgment as to whether an

---

[4]As noted above, there is also apparently no dispute that there was urine on the floor of the area in which some of the males were detained and that an officer gave them a mop and bucket to clean it up.

adverse inference instruction is warranted until after hearing the evidence at trial and that, in the event it determines an instruction is appropriate, it should at that time articulate a permissive instruction that more narrowly addresses the evidence and what may have been corroborated through the missing footage. These Defendants do not, however, dispute Judge Bryant's finding that Plaintiffs' attorneys are entitled to an award of fees and costs associated with filing the motion for sanctions.

Plaintiffs have sued the Individual Defendants for unlawful arrest and detention. These Defendants maintain that, in the event the jury finds those claims valid, Plaintiffs' confinement at the jail could be an element of their damages claims. They assert that the proposed instruction, despite the language thereof and the Court's intentions relating to the parties to whom it would be directed, could negatively impact their defense by bolstering the Plaintiffs' damages claims against them based on the conditions of confinement. Therefore, the Individual Defendants request that the undersigned reserve the right to craft an appropriate jury instruction after the close of evidence that is specifically tailored to sanction the County and King only or, in the alternative, to give no instruction on spoliation of evidence at all.

Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Ross v. Am. Red Cross*, 567 F. App'x 296, 301-02 (6th Cir 2014) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003)), *cert. denied*, 135 S. Ct. 143 (U.S. Oct. 6, 2014). "A federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014) (quoting *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009)), *reh'g en banc denied* (July 31, 2014). A district court "may impose many different kinds of

sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* (quoting *Adkins,* 554 F.3d at 653) (internal quotation marks omitted). "Because failures to produce relevant evidence fall along a continuum of fault -- ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Ross*, 567 F. App'x at 302 (quoting *Adkins*, 554 F.3d at 652-53) (internal quotation marks omitted).

An adverse inference "is an inference that the party fears producing the evidence; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013) (internal quotation marks omitted), *reh'g & reh'g en banc denied* (June 18, 2013). "An adverse inference instruction is appropriate if the [d]efendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction." *Ross*, 567 F. App'x at 302 (quoting *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)) (internal quotation marks omitted).

> A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[5]

*Automated Solutions Corp.*, 756 F.3d at 513 (quoting *Beaven*, 622 F.3d at 553). The second element may be satisfied by a showing that the evidence was destroyed in a negligent manner. *See Adkins*

---

[5]The magistrate judge did not set forth these elements or specifically analyze the issue before him in accordance therewith.

9

*v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012) (noting that "negligence is sufficient to find culpability"). With respect to the third element, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Automated Solutions Corp.*, 756 F.3d at 514 (quoting *One Beacon Ins. Co. v. Broad. Dev. Group, Inc.*, 147 F. App'x 535, 541 (6th Cir. 2005)). "Whether an adverse inference is permissive or mandatory is determined on a case-by-case basis, corresponding in part to the sanctioned party's degree of fault." *Id.* at 513 (quoting *Flagg*, 715 F.3d at 178).

The first two elements are not at issue here, as there does not appear to be any dispute that the Sheriff had an obligation to preserve the videotape evidence at the time of its destruction/loss and the County and Sheriff do not challenge the magistrate judge's conclusion that the footage was destroyed/lost with a culpable state of mind. Rather, the Defendants' objections focus on the third element -- relevance.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401(a). The County and Sheriff stop short of contending in their objections that the video footage is not relevant, and the Court finds that it is indeed relevant. Instead, these Defendants suggest that it is merely cumulative. The Plaintiffs apparently do not disagree, noting only that destruction of the evidence would prevent them from "presenting *unequivocal* evidence concerning the conditions of their confinement." (D.E. 119 at 5 (emphasis added).) Thus, all three elements have been satisfied. Where, as here, the lost or destroyed evidence is mostly cumulative of existing evidence, a permissive adverse inference instruction is an appropriate sanction. *See Ross v. Home Depot USA, Inc.*, No. 2:12-cv-743, 2014

WL 2805094, at *5 (S.D. Ohio June 20, 2014). A permissive instruction allows, but does not require, the finder of fact to infer a given fact. *Id.* Instead of the instruction recommended by the magistrate judge, the undersigned concludes that the following permissive instruction shall be given to the jury:

> You have heard testimony about video footage that was not produced. The Plaintiffs have argued that this evidence may have shown something important about this case.
>
> This Court has found, and you must accept as true, that the Plaintiffs requested Defendants Benton County and Sheriff Tony King to preserve video footage from the jail on the night of the alleged incidents. That footage existed at the time it was requested, but was destroyed by Sheriff King or permitted by him to be destroyed.
>
> From the Court's findings, you are allowed to infer, or conclude, that the lost footage would have shown something favorable to the Plaintiffs and unfavorable to Benton County and Sheriff King with respect to the Sheriff's conduct in the jail and jail parking area.
>
> I am not telling you that you have to reach that conclusion, only that you can if you think it reasonable. Whether or not you do so is solely a matter within your collective discretion based on your consideration of this instruction and all of the other evidence in the case.
>
> This instruction does not apply to events that occurred at the farm or during the transportation of the Plaintiffs to the Benton County jail, except as to the parking lots which would have been under the scrutiny of the cameras. Further, this instruction applies only Benton County and Sheriff King. You are instructed not to consider this inference against any of the Defendant Deputies at any time or place.

*See id.* *5-6. Of course, this instruction may be modified by the Court at the time of trial in order to conform to the evidence and argument presented. The Court rejects the Individual Defendants' suggestion that an adverse inference instruction against the County and Sheriff would somehow tarnish them. The instruction recommended by the magistrate judge and that set forth by this Court clearly advise the finder of fact that it is to be applied only to the County and Sheriff.

In sum, the report and recommendation of the magistrate judge is ADOPTED as MODIFIED

herein and the Plaintiffs' motion for sanctions is GRANTED. Plaintiffs' counsel is DIRECTED to submit to the magistrate judge on or before December 12, 2014 an affidavit of fees and costs for his review and determination.

IT IS SO ORDERED this 20th day of November 2014.

s/ J. DANIEL BREEN<br>CHIEF UNITED STATES DISTRICT JUDGE